UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENISE WHARRAN and
VIDELO SANDOVAL,

    Plaintiffs,

v.    Case No: 8:21-cv-2182-KKM-AAS

UNITED OF OMAHA
LIFE INSURANCE COMPANY,

    Defendant.
_____

## ORDER

    Glen Sandoval applied for a life insurance policy from United of Omaha to benefit his fiancée and father with the help of an independent broker who came to his house and assisted him in filling out an application. Ultimately, United of Omaha accepted the application bearing Glen's signature certifying that he had answered all questions truthfully, and issued the policy. When Glen died less than six months later and within the statutory contestability period, United of Omaha conducted a routine investigation and found that Glen had been convicted of reckless driving from a DUI in 2017, in direct contradiction to his answer on his application stating that he had not been convicted for reckless driving in the past five years. United of Omaha is entitled to summary judgment.

I. BACKGROUND[1]

In February 2020, Dale Lance, an independent insurance broker, met with Glen Sandoval and his fiancée Denise Wharran to discuss life insurance policies.[2] (Doc. 47 ¶ 2.) Glen elected to apply for a $280,000 term life express policy from United of Omaha. (*Id.* ¶ 3.) Glen worked with Lance to fill out an electronic application, but there were problems with the internet browser, so that application was not completed or accepted by United of Omaha. (*Id.* ¶¶ 9, 10.) Lance later submitted a paper application on Glen's behalf naming his fiancée Wharran and father Videlo Sandoval as the beneficiaries. (*Id.* ¶¶ 12, 13.)

The application identified plan information including the term, total amount, premium amount, and payment schedule. (*Id.* ¶ 5.) Of relevance to this case is question 7 regarding the applicant's driving history. Question 7 was preceded by a bolded section stating that "[i]f the Proposed Insured answers 'Yes' to questions 1 through 7 in this section, that person is not eligible for coverage under this application." (*Id.* ¶ 6.) Question 7 asked whether the applicant had been convicted of driving under the influence of drugs or alcohol, had been convicted of reckless driving, or had four or more moving violations

---

[1] The Court recounts the undisputed facts as contained in the record. To the extent facts are disputed or capable of multiple inferences, the Court construes the record in favor of the non-movants, Wharran and Videlo Sandoval. See Sconiers v. Lockhart, 946 F.3d 1256, 1262 (11th Cir. 2020).

[2] Because the decedent and one of the plaintiffs share a last name, the Court will refer to the decedent Glen Sandoval as "Glen" and his father Videlo Sandoval as "Videlo."

2

in the past five years. (*Id.* ¶ 7.) The application that parties agree United of Omaha used to issue the policy answers question 7 "no" and contains what appears to be Glen's signature at the bottom, certifying that all answers are true and complete. (*Id.* ¶ 14, Doc. 47-1 at 5.)

Less than a week after Glen met with Lance, United of Omaha issued Glen a life insurance policy for $280,000. (Doc. 47 ¶ 15.) Less than six months later Glen died, and Wharran and Videlo submitted claims under the policy. (*Id.* ¶¶ 16, 17.) In accordance with Florida insurance law, United of Omaha has a contestability period of two years, and thus began a routine investigation into Glen's death. *See* Fla. Stat. § 627.455; (*Id.* ¶ 18.) While conducting this investigation, United of Omaha learned that Glen had received five traffic violations and had been convicted for reckless driving within the past five years. (*Id.* ¶ 20.) At the conclusion of its investigation in July 2021, United of Omaha rescinded the policy and returned the premiums to Wharran and Glen's estate. (*Id.* ¶ 21.)

Plaintiffs Wharran and Videlo filed a complaint in state court against United of Omaha in September 2021 alleging breach of contract. (Doc. 1.) United of Omaha removed the case and counterclaimed for declaratory relief and for recission of the contract. (Doc. 18.) After conducting discovery, including depositions of Wharran, Lance, and a United of Omaha employee, United of Omaha moved for summary judgment against Plaintiffs on their breach of contract claim and on their counterclaims of recission and

declaratory relief. (Doc. 48.) Plaintiffs oppose summary judgment, arguing that there remain "numerous issues of fact for the jury's determination." (Doc. 49 at 1.)

## II. LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant always bears the initial burden of informing the district court of the basis for its motion and identifying those parts of the record that demonstrate an absence of a genuine issue of material fact. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). When that burden is met, the burden shifts to the nonmovant to demonstrate that there is a genuine issue of material fact, which precludes summary judgment. *Id.* The nonmoving party must "go beyond the pleadings and by [his] own affidavits" and point to evidence in the record that demonstrates the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotation omitted). A moving party is entitled to summary judgment when the nonmoving party "fail[s] to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id.* at 323.

4

The Court reviews the record evidence as identified by the parties and draws all legitimate inferences in the nonmoving party's favor. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1262 (11th Cir. 2020); *Dareing v. Bank of Am. Corp.*, 705 F. App'x 882, 885 (11th Cir. 2017) (per curiam). Here, to the extent that the record is disputed or capable of multiple inferences, the Court draws them in favor of Wharran and Videlo.

III.  ANALYSIS

United of Omaha contends that summary judgment is warranted because the life insurance policy was issued based on the application which contains material misrepresentations regarding the decedent's driving history. (Doc. 51 at 2.) Plaintiffs allege that there remains a dispute regarding what happened after the electronic application failed to go through. (Doc. 49 at 9.) Although they "do not contend the policy was improperly issued," Plaintiffs argue that the application upon which United of Omaha based their decision to issue the policy "was not completed during the meeting at [Glen's] residence." (*Id.* at 9.) Instead, Plaintiffs argue that United of Omaha knew of Glen's driving record because he told Lance, who Plaintiffs claim was acting as United of Omaha's agent. (*Id.*)

### A. United of Omaha properly rescinded the life insurance policy

In response to Plaintiffs' claim that United of Omaha breached the contract, United of Omaha counterclaims for recission based on Glen's incorrect answer to question 7. (Doc. 18 ¶ 19.) Florida law provides that "a misrepresentation, omission, concealment of fact, or

5

incorrect statement may prevent recovery under the contract or policy" if (a) "the misrepresentation, omission, concealment, or statement is fraudulent or is material to the acceptance of the risk" or (b) "if the true facts had been known to the insurer pursuant to a policy or other requirement, the insurer in good faith would not have issued the policy or contract . . ." Fla. Stat. § 627.409(1). "Where a misrepresentation occurs that meets the requirements of § 627.409[,] the insurer, as a matter of right, may unilaterally rescind." *Fabric v. Provident Life & Acc. Ins. Co.*, 115 F.3d 908, 912–13 (11th Cir. 1997) (holding additionally that a "material misstatement provide[d] a basis for recission" even when the plaintiff asserted that "he told the insurance agent about all of his insurance" and the agent "failed to list the undisclosed policies on the application").

  1. **Glen's application contained a misrepresentation about his driving history**

Parties agree that the application United of Omaha received answered question 7 in the negative, and that Glen was convicted for reckless driving in 2017. (Doc. 47 ¶ 20(1); 47-1 at 3.) Thus, the application contained a misrepresentation. Plaintiffs argue that Glen may not have signed the application, citing Wharran's deposition testimony that she was not sure the signature on the last page was his. (Doc. 41-1 at 18, 34–35, 88.) If Glen did not sign the application, Plaintiffs would have no claim for insurance benefits because the policy would be invalid. *See* Fla. Stat. § 627.404(5) (providing that a life insurance policy

6

"may not be effectuated unless . . . the person insured, having legal capacity to contract, applies for or consents in writing to the contract and its terms").

Further, Glen's signature binds him to the written answers on the application regardless of whether Lance was aware of his driving record. Because he signed a document adopting a misrepresentation, Glen broke the terms of the agreement and United of Omaha appropriately rescinded his life insurance policy. *See Allied Van Lines v. Bratton*, 351 So.2d 344, 347–48 (Fla. 1977) ("Unless one can show facts and circumstances that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract, it is binding."). Because Plaintiffs offer no evidence to suggest that anyone prevented Glen from reading the contract he signed, Glen was bound by the statements in the application.

2. **Glen's misrepresentation was material**

Plaintiffs argue that even if Glen misrepresented his driving history on the application, that fact could not have been material to United of Omaha's decision to issue the policy because United of Omaha "chose to investigate [Glen]'s prescription history, and not his driving history." (Doc. 49 at 13.) Plaintiffs cite United of Omaha's agent's deposition testimony that the underwriting process "automatically generates a pharmacy report" to "look for any medications that can cause the coverage to not be eligible to the client." (*Id.* at 13–14.) Plaintiffs allege because the pharmacy report for Glen flagged a

7

prescription for heart medication as an area of possible concern despite Glen answering "no" to the questions regarding history of heart failure, only Glen's prescription history was material to United of Omaha. (*Id.* at 14.) Plaintiffs further alleged that United of Omaha took too long to investigate Glen's death for his misrepresentation to be material. (*Id.* at 16.) United of Omaha did not order Glen's driving history until nine months after his death but ordered medical records first. (*Id.* at 17.) Plaintiffs claim that this indicates that Glen's "driving history was not material" to United of Omaha's investigation. (*Id.*)

However, as United of Omaha points out, the pharmacy report only indicates "possible uses" for drugs and an insurer has no obligation to investigate an applicant's answers because they it has "the right to rely on an applicant's representations in an application for insurance and is under no duty to further investigate." *United Auto Ins. Co. v. Salgado*, 22 So. 3d 594, 601 (Fla. 3d DCA 2009) (citation omitted). Nor does United of Omaha's automatic investigation into one matter make other matters on the application immaterial. This is especially true given the language on the policy's face indicating that any misrepresentation could void the application and any issued policy. (*See* Doc. 47-1 at 4.)

Deposition testimony from United of Omaha's corporate representative and underwriter indicates that if Glen had answered question 7 in the affirmative, United of Omaha would not have granted him the policy, and Plaintiffs offer no evidence to dispute

8

that claim. (Doc. 43-1 at 40.) Further, the application itself states that "[a]ny incorrect or misleading answers may void this application and any issued policy effective the issue date." (Doc. 47-1 at 4.) Because Plaintiffs do not contest that there was a valid application and the application with the misrepresentation is in the Parties' Statement of Undisputed Facts as Exhibit 1, United of Omaha is entitled to summary judgment on its recission claim. Because United of Omaha has shown that Glen made a misrepresentation that meets the requirements of § 627.409, it had a right to unilaterally rescind the policy. *See Fabric*, 115 F.3d at 912. Plaintiffs' breach of contract claim fails because United of Omaha properly rescinded the policy.

### 3. United of Omaha did not waive its right to rescind

Plaintiffs argue that United of Omaha "waived its right to rescind the policy by unequivocally recognizing the continued existence of the policy." (Doc. 49 at 19.) United of Omaha requested a background check on Glen on June 9, 2021, and received the results five days later, but did not rescind the policy until July 19, 2021. (*Id.* at 20.) In the weeks between the request and decision to rescind, Wharran and Videlo each received a status letter stating that United of Omaha was "in the process of reviewing the claim," but neither received notice that the policy was being considered for recission. (*Id.*) Plaintiffs allege that this intervening communication recognized the policy's continued existence. (*Id.*)

9

An insurer can waive its right of recission under Florida law if the following elements are met: "(1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of the right; and (3) the intention to relinquish the right." *Leonardo v. State Farm Fire & Cas. Co.*, 675 So. 2d 176, 178 (Fla. 4th DCA 1996). Plaintiffs cite *Johnson v. Life Ins. Co. Ga.*, 52 So. 2d 813, 815 (Fla. 1951), but their reliance on this case is misplaced. In *Johnson*, the insurer knew that the insured was suffering from tuberculosis "only two months after the date of the issuance of the policy" and "deliberately disregarded" this information and continued to accept premiums from the insured. *Id.* But here, United of Omaha began an investigation into Glen's death, requested a background check, and informed Plaintiffs of its ongoing investigation. Because Glen already died, United of Omaha did not continue to accept premiums, and there is no indication that United of Omaha had actual or constructive knowledge of Glen's misrepresentation until it rescinded the policy on July 19, 2021.

### B. Whether the decedent filled out a paper or electronic copy of the application does not create a material issue of fact

Plaintiffs argue that "[w]hat occurred after the electronic submission failed is very much in dispute . . ." (Doc. 49 at 9.) Wharran, in her deposition testimony, claims that she never saw the paper application, nor did she witness Glen sign it. (Doc. 41-1 at 23.) Despite

10

these contentions, however, Plaintiffs "do not contend the policy was improperly issued." (Doc. 49 at 9.) Instead, they argue that Glen "did not misrepresent his driving history as has been alleged, or that at the very least, a question of fact for the jury's determination exists as to that issue." (*Id.*) Beyond this statement, Plaintiffs do not elaborate on why their concerns regarding the authenticity of the application are material to the resolution of this case. As explained above, if Glen did not sign the application, it is invalid, and the plaintiffs cannot benefit from the policy. If Glen signed the application, he is bound by the statements contained therein, allowing United of Omaha to rescind based on his misrepresentation.

### C. The wording of question 7 is not ambiguous, nor does it create a material issue of fact

Plaintiffs allege that United of Omaha is not entitled to summary judgment because question 7 is a compound question and is unclear. Question 7 in its entirety reads: "In the past 5 years, has the Proposed Insured been convicted of driving under the influence of drugs or alcohol, been convicted of reckless driving, or had four or more moving violations?" (Doc. 47-1 at 3.)

Generally, "an insurer may not deny coverage under [§ 627.409 Fla. Stat.] . . . if the alleged misrepresentation was in response to an ambiguous question." *Mercury Ins. Co. v. Markham*, 36 So. 3d 730, 733 (Fla. 1st DCA 2010); *accord Boca Raton Comty. Hosp.,*

11

*Inc. v. Brucker*, 695 So.2d 911, 913 (Fla. 4th DCA 1997); *Comprehensive Benefit Adm'rs, Inc. v. Nu–Cape Constr., Inc.*, 549 So.2d 700 (Fla. 2d DCA 1989). Florida courts will find a question ambiguous when it "is susceptible to two reasonable interpretations, one in which a negative response would be correct and one in which an affirmative response would be correct. *Mercury Ins. Co.*, 36 So. 3d at 733. But here, the language is not ambiguous. Nothing about the wording of question 7 is unclear and Plaintiffs do not dispute that Glen's driving conviction violates the terms of the application on its face. An answer in the affirmative would indicate that the applicant had an applicable conviction or had four or more moving violations while an answer in the negative would indicate that the applicant had neither been convicted for driving under the influence or reckless driving nor had four or more moving violations in the past five years. Glen answered the question in the negative, but he had a conviction for reckless driving in the past five years. Plaintiffs cannot now claim the language is ambiguous to escape this misrepresentation.

### D. Lance lacked authority to waive provisions of the policy

Plaintiffs argue that United of Omaha knew about Glen's driving record because he disclosed that information to Lance. (Doc. 49 at 9.) Plaintiffs argue that Lance had "apparent authority" upon which they were entitled to rely. (*Id.* at 10.) In support of this argument, Plaintiffs point to several Florida district court of appeal decisions, focusing particularly on *Guarente-Desantolo v. John Alden Life Ins. Co.*, 744 So.2d 1123 (Fla. 4th

DCA, 1999). Although some of those cases are factually similar, Plaintiffs waived this argument by failing to allege an agency claim in their first or second amended complaint. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint."). The proper course for a party that discovers a new claim is to "seek to amend her complaint." *Id.*

But even if Plaintiffs did not waive their claim, like in the *Gilmour* case, the facts in the record do not support the conclusion that Lance was acting as United of Omaha's agent. Generally, a broker is "the agent of the insured." *Almerico v. RLI Ins. Co.*, 716 So.2d 774, 776 (Fla. 1998). But an "insurance broker may act in the dual capacity of broker for the insured and agent of the insurer." *Id.* at 776–77. An insurance broker can become an agent of the insurer if the insurer "cloak[s] unaffiliated insurance agents with sufficient indicia of agency to induce a reasonable person to conclude that there is an actual agency relationship." *Id.* at 783. To determine whether a broker is the agent of an insurer, Florida courts examine whether the insurer furnished company materials to the broker such as "blank forms, applications, stationary, or other supplies used in soliciting or negotiating insurance contracts." *Id.* at 777; *see also Essex Ins. Co. v. Zota*, 985 So.2d 1036, 1046 (Fla. 2008) (holding that statutory agency arises "when the insurer characterizes the broker as a

representative of the insurer, or when insurers contemplate broker solicitation of their products using the insurer's application and sales brochures") (internal quotations omitted).

Plaintiffs contend that Wharran's testimony establishes a dispute as to whether Lance was acting as United of Omaha's agent when he allegedly listened to Glen disclose his reckless driving conviction. (Doc. 49 at 10, 12.) Although Lance indicates that he received brochures and applications from various insurers (several of which he gave to Glen), he was not employed by any agency at the time he assisted Glen with his application. (Doc. 42-1 at 13, 33–34.) Further, Glen would have known that Lance did not represent United of Omaha because Lance "typically" offered his clients insurance policies from "a couple of different [companies]" (*Id.* at 17.) Viewing the facts in the light most favorable to Plaintiffs, Lance could have been acting as United of Omaha's agent because they provided him with brochures and applications.

However, even if Lance was acting as United of Omaha's agent, "an agent cannot bind an insurer by contracting to issue a policy when the written application expressly states that the agent cannot so contract." *Almerico*, 716 So.2d at 781. Here, the application bearing Glen's signature warns that "[n]o producer can waive or change any receipt or policy provision or agree to issue any policy." (Doc. 47-1 at 4.) Thus, even if there is a dispute as to whether Lance was United of Omaha's agent, it is not material because the language of the application disclaimed Lance's ability to alter Glen's eligibility.

14

### E. United of Omaha is entitled to declaratory relief

United of Omaha seeks summary judgment on its declaratory judgment claim. (Doc. 48 at 1.) According to United of Omaha, it is entitled to declaratory relief because there is doubt as to the validity of the policy, and they seek to have it declared void ab initio. (*Id.* at 25.) United of Omaha seeks a declaration that Glen's coverage under the policy is void and of no force and effect, and Plaintiffs have no right of payment under the policy. (*Id.*) "[A]n insurer may pursue a declaratory action which requires a determination of the existence or nonexistence of a fact upon which the insurer's obligations under an insurance policy depend." *Higgins v. State Farm Fire & Cas. Co.*, 894 So.2d 5, 12 (Fla. 2004).

For the reasons explained above, and in § 627.409(1)(a) and (b) of the Florida Statutes the Court grants United of Omaha's motion for summary judgment on this claim. Namely, the policy was void ab initio because Glen signed a document with material misrepresentations about his driving record. The material misrepresentation in the signed application "renders the policy null and void from the date of inception." *Progressive Am. Ins. Co. v. Papasodero*, 587 So.2d 500, 502 (Fla. 2d DCA 1991), *review denied* 598 So.2d 77 (Fla. 1992).

## IV. CONCLUSION

Glen Sandoval misrepresented his driving history when he applied for life insurance with United of Omaha. Because there is no dispute as to any material fact in this case,

15

United of Omaha is entitled to summary judgment on all claims. Accordingly, the following is **ORDERED:**

1. United of Omaha's motion for summary judgment (Doc. 48) is **GRANTED**.

2. The Clerk is directed to enter judgment for United of Omaha on all counts; terminate any pending motions and hearings; and to close this case.

**ORDERED** in Tampa, Florida, on December 13, 2022.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**